**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO.09-CR-30072-WDS |
| | ) |
| DEANNA L. COSTELLO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**STIEHL, District Judge:**

This matter is before the Court on the parties' submissions for determination on the issue of the defendant's guilt.

The basic facts of this case are not in dispute. The defendant, Deanna L. Costello, was charged by the grand jury in a single count Indictment with harboring illegal aliens. Specifically, the indictment charges that in October of 2006, the defendant, in reckless disregard of the fact that an alien, namely Rogelio Salaices-Arenales, had entered and remained in the United States, did harbor, conceal, and shield him from detection, all in violation of 8 U.S.C. § 1324(a)(1)(A)(iii).

**I.  FINDINGS OF FACT**

The parties have stipulated that the defendant and Salaices-Arenales were boyfriend/girlfriend and that Salaices-Arenales had lived with the defendant at 816 LaSalle Street in Cahokia, Illinois for approximately one year before his arrest in July of 2003 on federal drug charges. The defendant knew that Salaices-Arenales plead guilty in his 2003 case and was deported to Mexico after serving several years in federal prison.

In March of 2006, after Salaices-Arenales had been deported, the defendant picked up

Salaices-Arenales from a Greyhound Bus station in St. Louis, Missouri, and transported him to her residence at 816 LaSalle Street, Cahokia, Illinois.  He resided there, for the majority of the time, until his arrest on October 10, 2006, for being an illegal alien and illegally returning to the United States.

The parties have further stipulated that on several occasions after his return to the United States, Salaices-Arenales and the defendant had disagreements which resulted in his moving out of the defendant's home.  None of these occasions of separation lasted more than two (2) weeks and during those times Salaices-Arenales stayed with his uncle in Fairmount City, Illinois, or with his brother in Collinsville, Illinois.

In October of 2006, Drug Enforcement Administration officers attempted to stop a vehicle occupied by Salaices-Arenales and his brother.  That vehicle evaded the attempted stop and fled. During that attempt to evade arrest, Salaices-Arenales called the defendant, and that conversation was recorded.  Salaices-Arenales was subsequently arrested by Drug Enforcement Administration officers on that same day after the vehicle was involved in an accident. The defendant came to the area of the accident within a short time of the accident.

The recorded conversation (Stip. Of Facts, Ex. 1), contains the following exchange:

| | |
|---|---|
| Deanna: | Hello |
| Rogelio: | Hey Deanna, the police is following us. |
| Deanna: | Where? |
| Rogelio: | Here in St. Louis, they are going to stop us. We have stuff with us. |
| Deanna: | Oh, sh*t. |
| Rogelio: | Here is another one in Cahokia. |
| Deanna: | Cahokia, where are you? |
| Rogelio: | Yes, son of a b*tch, we are screwed Deanna. Go, go, go, we are screwed, get in your house dear. I am in East St. Louis. |
| Deanna: | East St. Louis? |
| Rogelio: | Yes, run, I am getting off the car running. |
| Deanna: | Where are you going to run? |

2

| | |
|---|---|
| Rogelio: | We have stuff, we have "mota"(marijuana), we have "mota" (marijuana). Keep going, I am going to take off running f*ck it. Hey Deanna, I don't know if I am going to make. |
| Deanna: | What? |
| Rogelio: | I don't know if we are going to make it. |
| Deanna: | Do you have a lot or what? |
| Rogelio: | Like sixty (60) or eighty (80). Go there, let's loose [sic] them there. I don't know if we will make it Deanna, eh? |
| Deanna: | All right. |
| Rogelio: | Okay, then |
| Deanna: | Bye. |

The defendant was indicted, and the government contends that the defendant "harbored" an illegal alien and seeks a determination of guilt by this Court on those charges. The elements of the offense of harboring an illegal alien are that the person allegedly harbored was illegally in the United States; that the defendant had direct knowledge of his illegal entry and remaining in the United States and that the defendant knowingly harbored or shielded from detection, the individual. It is only the third element that is at issue in this case, i.e., whether the defendant "harbored" the alien under the facts of this case.

## II. CONCLUSIONS OF LAW

The government asserts that providing shelter to the illegal alien, substantially facilitating the alien's remaining illegally in the United States, is sufficient to constitute harboring under the statute.

The language of §1324(a)(1)(A)(iii) provides in pertinent part as follows:

> Any person who ... knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation ... shall be punished according to [the penalties outlined in this section].

The harboring provision of § 1324 is construed liberally. The government is only required to prove that the defendant concealed, harbored or shielded the illegal from detection. It is not required to prove all concealed, harbored *and* shielded. *United States v. Ye*, 588 F.3d 411, 414 (7th Cir. 2009), quoting United *States v. Rubio-Gonzalez*, 674 F.2d 1067, 1073 (5th Cir. 1982). Section 1324 is designed to prosecute those who smuggle aliens into this country for financial gain, and also for those who realize financial gain by then hiring illegal aliens. *United States v. Li,* 615 F.3d 752*,* 756 (7th Cir. 2010).

The Seventh Circuit has yet to clearly define the parameters of "harbor" which is the theory under which the government seeks conviction. The government asks this Court to find that providing shelter violates §1324. The defendant asserts that something more is required to support a conviction for harboring or shielding which involves sheltering. The government seeks a "plain meaning" application of the term. *See United States v. Lopez*, 521 F.2d 437, 441 (2d Cir. 1975) (applying dictionary definitions to the terms). The term, "harbor," means, ". . . to give shelter to; offer refuge to: They harbored the refugees who streamed across the borders. 5. to conceal; hide: to harbor fugitives. 6. to keep or hold in the mind; maintain; entertain: to harbor suspicion. . . . 7. to house or contain." Dictionary.reference.com/browse/harbor (last visited April 14, 2011). The term "shield" is defined as: "to hide or conceal; protect by hiding" *Id.*

A. Sheltering an Illegal Alien

The cases which have addressed the issue of sheltering, e.g. harboring charges under § 1324, have reach varied conclusions. *See United States v. Lopez,* 521 F.2d 437, 439 (2d Cir. 1975) (where the facts of the case revealed that the defendant had several single family houses

4

which he leased to aliens for $15.00 per week, knowing the alienage of the renters. The court reviewed the history of §1324, and found that "provided. . . the person charged has knowledge of the alien's unlawful status" if the defendant gives "substantial assistance to facilitate an alien's 'remaining in the United States illegally,'" then the defendant has violated § 1324. *Id.* at 440-41);*United States v. Ramierez*, 250 Fed. Appx. 80, 83 (5th Cir. 2007) (where the court found that the defendant's "conduct substantially facilitated the aliens' remaining   In the United States in violation of the law. To 'substantially facilitate' means to make an alien's illegal presence in the United States significantly 'easier or less difficult." *Id.*); *United States v. Tipton*, 518 F.3d 591, 595 (8th Cir.2008) (actions of hiring undocumented aliens, securing apartments, paying for rent and utilities, providing transportation to and from their jobs to avoid their detection, and maintaining counterfeit immigration documents constituted harboring); *United States v. Balderas*, 91 Fed. Appx. 354, 354-55 (5th Cir. 2004) ("Because affording shelter to an illegal alien is conduct which by its nature tends to substantially facilitate the alien's remaining in the United States illegally, providing shelter to illegal aliens constitutes harboring illegal aliens under 8 U.S.C. § 1324(a)(1)(A)(iii)."); *compare with United States v. Ozcelik*, 527 F.3d 88, 97 (3d Cir. 2008) (where the defendant advised the alien to "stay low key" for a few months was not sufficient to amount to harboring); *United States v. You*, 382 F.3d 958, 966 (9th Cir. 2004) (where the court held that there must be an "intent" that the defendant intended to violate the law to support a conviction under §1324.)

The facts of the case reveal that the defendant clearly allowed the alien in question to live with her, that she had a relationship with him, that he called her when he was in trouble with the law, and that she was aware that he had been previously deported. There is no evidence in this

record that the defendant provided assistance to obtain illegal documents, or gave him financial assistance, other than the stipulated cohabitation (which he voluntarily left on several occasions). The stipulation also provides, however, that the defendant picked up the alien from the Greyhound station when he did illegally return to the United States.[1]

If this case had proceeded to a jury trial, the Court would have favorable considered giving that part of the Seventh Circuit Pattern Instruction 4.06 which is commonly referred to as the "Ostrich" instruction. It provides:

> You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut her eyes for fear of what she would learn, you may conclude that she acted knowingly. . . .

In this case, the facts support a finding by the Court that the defendant knew that Rogelio Salaices-Arenales was an illegal alien, and her actions were designed, at least in part, to facilitate and conceal his return to the United States as an illegal alien, and to harbor him in this country and, therefore, that she acted knowingly.

The Court therefore, **FINDS** that the actions of the defendant, including picking the alien up at the Greyhound station, giving him shelter, and coming to his aide after he was arrested, amount to "substantial assistance" because she made his illegal presence in the United States easier, and facilitated his avoidance of detection. The Court notes that this is not a case where the

---

[1] The government asserts that the defendant knew that the alien had been involved in drugs, however, the record would not support a finding that the defendant, herself, was involved in the drug activities, and she is not charged with that offense.

defendant received any financial gain from the presence of Rogelio Salaices-Arenales in this Country, but it is a case, where her personal involvement with the alien may have led her to make decisions which were not wise, and were in violation of the federal law against harboring an illegal alien.

Accordingly, the Court **FINDS** that the government has established that the defendant, Deanna L. Costello harbored, concealed, and shielded an illegal alien, Rogelio Salaices-Arenales, from detection, all in violation of 18 U.S.C. § 1324(a)(1)(A)(iii). Accordingly, the Court **FINDS** that the defendant, Deanna L. Costello, is **GUILTY** of the charge of harboring an illegal alien, Rogelio Salaices-Arenales in violation of 18 U.S.C. § 1324(a)(1)(A)(iii), and she is adjudged **GUILTY** of that crime.

This matter is, therefore, set for sentencing on Friday, August 5, 2011, at 1:30 P.M. No further notice of this date will be given. The defendant, Deanna L. Costello, shall remain on bond, under all the conditions previously set, pending sentencing.

**IT IS SO ORDERED.**

**DATE:   18 April, 2011**

                                                    **/s/  WILLIAM D. STIEHL          **
                                                         **DISTRICT JUDGE**